IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | Criminal No. 1:20-cr-00265 (APM) |
| v. : | |
| : | |
| TRAQUAN GRAHAM : | |

DEFENDANT'S SENTENCING MEMORANDUM

Traquan Graham, through undersigned counsel, respectfully urges the Court to impose a sentence of 1 year and 1 day, with credit for the 207 days that Mr. Graham will have served at the time of sentencing, and place Mr. Graham on a period of supervised release. Such a sentence is sufficient but not greater than necessary to reflect the seriousness of, and provide just punishment for, the offense of handgun possession under the circumstances of this case, and takes into account Mr. Graham's personal history and characteristics. *See* 18 U.S.C. 3553.

**Facts and Circumstances of this Case**

November 17, 2020, surveillance footage depicts Mr. Graham walking in the area or 1433 Montana Avenue, NW. Both Mr. Graham and the other man react to a loud noise at the time when according to the Government shots are heard nearby.[1] It does not appear from the footage that shots were fired at Mr. Graham.

The same footage depicts Mr. Graham peering around a building behind which he ducked when shots were fired; retrieving a firearm from his waistband, and then running off in the opposite direction from the sound of gunfire.

Mr. Graham's possession of a handgun under the circumstances, while unlawful, distinguishes the offense from circumstances in which gun possession poses far greater risk to the community. Mr. Graham did not fire his weapon; he did not possess it in connection with

---

[1] the surveillance footage reviewed by counsel did not contain audio

1

drug trafficking nor any other dangerous offense, and he only retrieved it from his waistband only at the sound of nearby gun fire. Mr. Graham ran away from the sound of gun fire never having fired his weapon nor pointed it toward anyone.[2]

**Mr. Graham's History and Characteristics**

Mr. Graham was 15 when his father was released from prison after having been incarcerated throughout Mr. Graham's infancy and youth. PSR para 43. When Mr. Graham was 19 years old, his mother, though employed as a social worker, moved temporarily with Traquan and his three younger siblings, to a homeless shelter. PST at para 44.

In 2012, when he was 20, Mr. Graham was diagnosed with bipolar disorder. PSR para 60; 62. Mr. Graham does not like to discuss his diagnosis and feels that talking to his fiancée is sufficient in lieu of mental health treatment. *See, e.g.,* PSR at para 61. However, counsel believes that unmedicated bipolar disorder may help to explain Mr. Graham's criminal history, which began in earnest the same year he was diagnosed with bipolar disorder.[3]

Although he has a history of abusing marijuana and percocet, Mr. Graham has never completed the Bureau of Prisons Residential Drug and Alcohol Program (RDAP). PSR at para 65; 67.

---

[2] The PSR includes language excluded from the agreed upon statement of facts but which nonetheless the PSR writer apparently copied from the *Gerstein* in this case, suggesting that there is evidence that Mr. Graham may have fired a gun. *See* PSR at para 13. It is counsel's understanding that on November 17, 2020, Mr. Graham did not fire a gun. Further it is counsel's understanding that the Government does not contend that Mr. Graham fired a gun on November 17, 2020.

[3] In 2011 Mr. Graham received a PBJ for failure to pay metro fare.

### Mr. Graham's Criminal History Score is Over Represented

As is reflected in the "Defendant's Objections" portion of the presentence report, the defense contends that Mr. Graham's conviction for robbery in D.C. Superior Court should be assigned no criminal history points because Mr. Graham was sentenced pursuant to the Youth Rehabilitation Act (YRA) and ultimately completed his supervision successfully. Para 32 p. 10. Therefore, Mr. Graham should receive the benefit of his YRA sentence, i.e., expungement, and the matter should not garner any criminal history points.

Mr. Graham's criminal history score was not adjusted in response to the defense objection, the final PSR noting that there are no records to substantiate the expungement and at any rate, if expunged, the conviction "would be" considered a justification for an upward departure under 4A1.3.   Final PSR at 26.

Counsel disagrees that, if expunged, the matter would necessarily have justified an upward departure. *See, e.g.,* 4A1.3(a)(1)(only if a defendant's criminal history category "substantially" underrepresents the likelihood that he will recidivate, *may* an upward departure be warranted). Moreover, even if an expunged YRA sentence were to warrant an upward departure, it is not certain that any such upward departure would result in Mr. Graham's placement in the same criminal history category in which the three points assigned to this matter have placed Mr. Graham. *See* 4A1.3(a)(4)(extent of upward departure is to be determined by beginning at the criminal history category applicable to "defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's").

Thus, the defense continues to dispute the final PSR's determination to leave Mr. Graham's criminal history score the same due, in part, to the fact that even an expunged conviction would nevertheless have been used to justify an upward departure. Final PSR at 26.

Moreover, the PSR contains all the facts necessary to support expungement: While on YRA probation, Mr. Graham was re-arrested for a case which was ultimately dismissed. PSR at para 32.  The US Parole Commission found no further violation and the YRA probation was closed due to expiration of time. *Id.*.  Therefore, Mr. Graham should receive the benefit of his YRA sentence and the matter should be assigned no criminal history points.

Mr. Graham's guidelines without the 3 criminal history points assigned by his YRA sentence, would be 27-33 months.  A 25% reduction from the low end, would result in a recommendation for 20.25 months sentence. *See* Plea Agreement at 4 (recognizing that a criminal history may "increase or decrease" as a result of PSR investigation) and at 5 (the government "agrees to allocate for a sentence at 25% below the bottom of the guidelines range, which we **estimate** to be 22 months,") (emphasis added).

The year and a day sentence recommended hereinis only slightly below what would have been the government's recommendation were the YRA sentence not to be considered.

**WHEREFORE,** for these reasons and for others to be advanced at the sentencing hearing, counsel submits that a sentence of 12 months and one day, with credit for 207 days served, is adequate to serve all of the sentencing goals enunciated in 18 U.S.C. 3553(a).

                  Respectfully submitted,

                  _____/s/_____
                  Nikki Lotze
                  LOTZE MOSLEY
                  400 7th Street, N.W.
                  Suite 202
                  Washington, DC 20004
                  (202) 393-0535
                  NLotze@LotzeMosley.com